**UNITED STATES of America, Plaintiff,**

v.

**Richard K. HOWELL, D. O., Defendant.**

**No. CR 79–15.**

United States District Court,
D. Oregon.

Feb. 28, 1979.

Sidney I. Lezak, U. S. Atty., Frank A. Wilson, Asst. U. S. Atty., Portland, Or., for plaintiff.

Philip H. Lowthian, of Evans, Hall & Grebe, Portland, Or., for defendant.

## ORDER

SKOPIL, Chief Judge.

This case presents a problem regarding disclosure of the contents of six "black books" originally prepared by and in the possession of the defendant. The books were originally sought by means of a subpoena duces tecum to the defendant to bring them before a grand jury. The books were provided to Judge Burns by the defendant for *in camera* inspection to determine the validity of the defendant's claim that they are privileged from production because of the Fifth Amendment prohibition against self-incrimination. Judge Burns reviewed the documents and then gave them to the clerk with directions to retain them until further order of the court. Minute Order, July 11, 1978. After considering the defendant's Fifth Amendment claim, Judge Burns entered an order directing the clerk to make available to the grand jury all of Book A and those portions of Books B and C that contained entries after July 7, 1977 (the date that the defendant became an employee of a professional corporation). Order, January 10, 1979. The subpoena was quashed as to the remaining documents.

Before this order was implemented, the grand jury returned an indictment of the defendant. The grand jury completed its investigation and returned the indictment without ever seeing the "black books" which are in dispute. The United States Attorney does not now seek the books for use before the grand jury since its investigation of the case is completed.

The United States Attorney, however, does wish to obtain the books for use as evidence in prosecuting the defendant. To do this it has filed applications for two search warrants—one for the documents held to be exempt from the Fifth Amendment claim, the other for the documents held to be covered by the Fifth Amendment. The search warrants are directed to the office of the clerk of this court, where the documents are still being held pursuant to Judge Burns' order.

Because of the unusual situation presented by this case, a hearing was set before me on February 13, 1979. The defendant was present with his counsel. At that time I heard argument on the question of whether either of the search warrants should be issued. In addition, the defendant submitted a memorandum in opposition to the application for the search warrants.

I will not consider whether or not Judge Burns was correct in his determination that certain of the books were covered by the Fifth Amendment.[1] Although I might not have reached the same conclusion, I consider his determination to be the law of the case at this point. For purposes of analyzing the applications for search warrants, I will presume that the defendant could not be compelled to produce the books in question.

■ The first question that arises is whether a search warrant can issue for sealed documents in the possession of the clerk of this court. Neither the government nor the defendant have been able to locate any cases on this issue. I have been similarly unsuccessful in finding any precedent on this question. However, it seems obvious to me that documents submitted by a defendant to a judge for *in camera* inspection cannot thereupon be seized from the judge's chambers by the United States Attorney pursuant to a search warrant.[2]

---

1. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *United States v. Osborn*, 561 F.2d 1334 (9th Cir. 1977), explicitly left open the question of whether a defendant can be compelled to produce his own "private papers" pursuant to a subpoena duces tecum.

2. The documents in this case were transferred from the judge's chambers to the clerk's office for safekeeping. The clerk was directed to keep the documents sealed until further order of this court or the Court of Appeals. The fact that it is the clerk who currently has physical

Such a practice would defeat the purpose of *in camera* inspections. Whether the rule precluding such searches is labeled "judicial immunity", "inherent judicial power", or simply an outgrowth of the Fourth Amendment "reasonableness" requirement is not important. The rule, however, must apply in order to protect the functioning of the judicial branch.

I have concluded that no search warrant should issue against the clerk of this court to find and seize the documents in his possession. Since the documents are no longer being sought pursuant to a subpoena duces tecum, they should be returned to the defendant. However, in order to preserve the record, the clerk shall be directed to make copies of all the documents and to hold them under seal until further order of this court or the Court of Appeals.[3]

The United States Attorney at oral argument stated that if the books were returned to the defendant, he would immediately seek a search warrant to obtain them from the defendant. This could presumably be done as early as the moment they are given to the defendant by the clerk. The issue of whether such search warrants could be issued is not technically before me at this time. The present search warrant applications are addressed only to the offices of the Clerk of the Court. However, due to the probable immediacy of the problem and the fact that both parties addressed the issue, I feel that I should indicate now whether this court would issue such a warrant.

The United States Attorney cited *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), to support its argument that there is no Fifth Amendment privilege to protect personal papers in a search and seizure situation, as opposed to a subpoena duces tecum. The Supreme Court had previously left the question unresolved:

"This case thus does not require that we consider whether there are items of evidential value whose very nature pre-

cludes them from being the object of a reasonable search and seizure." *Warden v. Hayden*, 387 U.S. 294, 302–03, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967).

In *Murray* the Court held that "such items can be taken during a lawful search and seizure and are admissable." *Murray, supra*, 492 F.2d at 191. This principle was later adopted by the Supreme Court. *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

■ I agree with the government that in the normal situation no Fifth Amendment claim could be asserted in opposition to the application for a search warrant. I also agree that in this case a search warrant can be issued (upon proper application) for the documents that Judge Burns held were not covered by the Fifth Amendment claim. Order, January 10, 1979.

■ The problem in this case is with the documents that Judge Burns held *were* covered by the Fifth Amendment. Because of the *in camera* inspection, the United States Attorney has now verified the existence of the documents, their relevance, and their location. My concern is that the government is attempting to accomplish indirectly what it may not have been able to do directly.

In *Andresen v. Maryland, supra*, the Court stated:

"[A]lthough the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, see *Fisher v. United States*, supra, a seizure of the same materials by law enforcement officers differs in a crucial respect—the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence." *Andresen, supra*, 427 U.S. at 473–74, 96 S.Ct. at 2745.

possession of the documents should not affect the rule to be applied.

3. If necessary, these copies could be used at trial in place of the originals. Fed.R.Evid. 1001(4), 1003, 1004.

This distinction is crucial here. Neither *Andresen* nor any of the other cases that I have reviewed involve the "one-two" punch that the government is attempting to use here: A subpoena duces tecum quashed on Fifth Amendment grounds followed by a search warrant for the same documents. This unusual procedural background infuses the element of coercion that is not normally found in search and seizure cases. The defendant has in fact been required to aid in the discovery, production, and authentication of the documents submitted for *in camera* inspection. It would be a cruel hoax on the defendant to grant the motion to quash the subpoena and then turn around and make the documents available by a search warrant. Such a procedure could raise the "trilemma of self-accusation, perjury or contempt." *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964).

Granting the application for the search warrant in this situation could open up the possibility of abuse by the government. The requirements for issuance of a subpoena duces tecum are much less stringent than for a search warrant. Furthermore, no judicial determination is made prior to the subpoena's issuance. The government could use the defendant's Fifth Amendment claim to specific documents under the subpoena to establish probable cause that the documents actually exist. The government could then use that probable cause to justify a search warrant. The effect of this would be to negate any Fifth Amendment defense to a subpoena duces tecum. I cannot believe that the Supreme Court in *Andresen* intended its holding to be that broad.

I realize that the effect of my ruling in this case is to force the government to an election between using a subpoena duces tecum or a search warrant when it wishes to reach documents in the hands of a defendant or potential defendant. If the government has probable cause and can meet the other Fourth Amendment requirements, it can proceed with a search warrant. If not, it can use a subpoena duces tecum to obtain any documents that are not protected by the Fifth Amendment. The government cannot, however, "piggyback" the subpoena and search warrant powers to circumvent the protections of the Fourth and Fifth Amendments.

IT IS ORDERED that the application for search warrants directed to the offices of the clerk of this court, dated January 23, 1979, and February 13, 1979, are denied.

IT IS FURTHER ORDERED that the clerk is directed to make copies of all documents held pursuant to Judge Burns' order dated January 10, 1979, and to retain those copies under seal until further order of this court or the Court of Appeals. The original documents shall be returned to the defendant within ten days of the date of this order.